Argued and submitted July 16, affirmed September 26, 2001

CONIFER RIDGE HOMEOWNERS
ASSOCIATION, INC.,
*Appellant,*

*v.*

Stephen T. HAYWORTH
and Tamara A. Hayworth,
*Respondents.*

C990122CV; A110100

32 P3d 929

Fred C. Nachtigal argued the cause for appellant. With him on the briefs were Nachtigal, Eisenstein & Associates and Stephen R. Owen.

John M. Junkin argued the cause for respondents. With him on the brief was Bullivant Houser Bailey.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

## BREWER, J.

■    In this action for injunction, plaintiff Conifer Ridge Homeowners Association, Inc., appeals from the trial court's denial of its request for attorney fees. We review for errors of law, *AutoLend, IAP, Inc. v. Auto Depot, Inc.*, 170 Or App 135, 138, 11 P3d 693 (2000), *rev den* 332 Or 240 (2001), and affirm.

Defendants Stephen and Tamara Hayworth own real property in the Conifer Ridge Subdivision (Conifer Ridge), a residential development in Washington County. The lots within Conifer Ridge are subject to certain restrictive covenants detailed in the Homeowners Association's Covenants, Conditions, and Restrictions (CC&Rs). One of the CC&Rs provides that all plans for construction must be approved by plaintiff's Architectural Control Committee (ACC). In 1998, defendants submitted to the ACC a set of building plans for a home on their lot in Conifer Ridge (Lot 25). Shortly thereafter, the ACC rejected the plans. In early 1999, despite not having approval from the ACC, defendants began construction using the rejected plans. Plaintiff then filed this action to enjoin the construction.

Plaintiff moved for a preliminary injunction, and the court held a show-cause hearing. After hearing evidence and argument, Judge Kohl granted the motion for a preliminary injunction.[1] The order provided, in part:

> "1. The Plaintiff's request for a Preliminary Injunction is hereby granted;
>
> "2. Defendants * * * are hereby enjoined from any further construction of any type on LOT 25, CONIFER RIDGE SUBDIVISION, without prior approval of the Conifer Ridge Homeowners Association Architectural Control Committee;
>
> "3. The Plaintiff shall post a bond in the sum of $122,800.00."

---

[1] Although we generally do not refer to trial judges by name, instead referring to "the court" or "the trial court," we break from that procedure here in order to accurately discuss the procedural posture of this case, which involves relevant hearings before two different circuit court judges.

In a handwritten notation above the judge's signature, the order also provided that "[t]his order shall only be effective upon the posting of the bond." The order was signed and dated April 22, 1999. Plaintiff never posted the bond.

In May and June of 1999, plaintiff and defendants negotiated and agreed upon plans for defendants' lot. The plans were approved by the ACC on June 30. On July 30, defendants moved to dismiss plaintiff's action, arguing that it was moot because the ACC had accepted defendants' modified plans. Plaintiff objected, arguing that it would not be entitled to attorney fees if the action were dismissed as moot. On October 20, Judge McElligott granted defendants' motion to dismiss and ordered the resolution of the attorney fee issue pursuant to ORCP 68. Both parties petitioned for attorney fees.

The attorney fee hearing focused on whether plaintiff was the prevailing party in this action. The court gave the parties permission to request that Judge Kohl certify a prevailing party in the action. Plaintiff made such a request, but the court did not make a certification. Subsequently, Judge McElligott issued an order concluding that no effective preliminary injunction had been entered. Accordingly, the court determined that there was no prevailing party under ORS 20.096 and denied both petitions for attorney fees.[2]

On appeal, plaintiff assigns error to the court's denial of its motion for attorney fees on the ground that there was no prevailing party. Relying on our decision in *Meduri Farms, Inc. v. Robert Jahn Corp.*, 120 Or App 40, 44, 852 P2d 257 (1993), plaintiff first asserts that it ultimately attained the result it sought when it brought this action to stop defendants from building a house that had been rejected by the

---

[2] ORS 20.096 provides, in part:

"(1) In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and disbursements.

"* * * * *

"(5) * * * '[P]revailing party' means the party in whose favor final judgment or decree is rendered."

ACC. Therefore, plaintiff reasons, it was the prevailing party. Defendants respond that, because plaintiff did not file the required undertaking, the preliminary injunction never became effective, and there was no prevailing party.

In *Meduri Farms*, a lessor brought an action to enjoin a lessee from interfering with the lessor's orchard operation. The trial court first granted a temporary restraining order, and it later issued a preliminary injunction. *Id.* at 42. When the lease expired during the pendency of the action, the trial court dismissed the lessor's claim for a permanent injunction as moot; however, the court entered judgment against the lessee for the lessor's attorney fees. *Id.* The lessee appealed, arguing that the court erred in awarding attorney fees where the lessor's claim was dismissed, because there was no "prevailing party," as required by ORS 20.096. We noted that the lessor sought to enjoin the lessee from interfering with its orchard operation and "[t]he trial court granted that relief first by a temporary restraining order and then by a preliminary injunction." *Id.* at 44. We affirmed the award of attorney fees, holding that, "[w]hen one party seeks nonmonetary relief * * *, to determine who is the prevailing party, courts weigh 'what was sought by each party against the result obtained.'" *Id.* (quoting *Lawrence v. Peel*, 45 Or App 233, 243, 607 P2d 1386 (1980)).

Plaintiff first argues that *Meduri Farms* "is directly on point" because

> "[i]n both cases the plaintiff sought to permanently enjoin the defendants' actions. In both cases the 'plaintiff received everything it sought.' In both cases the suits were dismissed as moot, prior to the entry of a permanent injunction. Therefore the outcome of both cases should be the same. Plaintiff is the prevailing party and is entitled to the award of attorneys' fees and costs in this case."

We disagree.

In *Meduri Farms*, an effective preliminary injunction was issued by the trial court. Here, however, the preliminary injunction was to become effective only upon the posting of a bond by plaintiff. Because plaintiff never posted the bond, the injunction never became effective.[3] The lessor in *Meduri*

---

[3] In fact, without a waiver by the court, plaintiff would have been required to post security or a bond to make the preliminary injunction effective even without a

*Farms* was a prevailing party because it received judicial relief in the form of a preliminary injunction. "Although the claim for permanent injunction was dismissed as moot * * *, [the lessor] had received everything it sought. * * * [The lessor] prevailed on the injunction claim." 120 Or App at 44. In the present case, although defendants ultimately complied with plaintiff's demands, they did not do so as a result of judicial compulsion. Without an effective order granting plaintiff the injunctive relief it sought, plaintiff could not be a prevailing party under ORS 20.096.

■ Second, plaintiff argues that the attorney fee provision in the CC&Rs did not require it to be a prevailing party in order to recover attorney fees in this action.[4] Implicit in that argument is the correct understanding that, if an attorney fee clause does not refer to the prevailing party or employ a similar term, then the definition of prevailing party in ORS 20.096(5) does not apply. *Quality Contractors, Inc. v. Jacobsen,* 139 Or App 366, 369, 911 P2d 1268, *rev den* 323 Or 691 (1996). It is true that paragraph 7.05 of the CC&Rs does not employ the specific term "prevailing party." The questions remain, however, whether it employs a term of like effect and whether, in any event, plaintiff satisfied the relevant contractual conditions for the recovery of attorney fees.

At oral argument on appeal, plaintiff's attorney conceded that, unless plaintiff successfully enforced the CC&Rs, the attorney fee provision was not triggered. That concession

---

specific requirement in the order. *See* ORCP 82 A(1)(a) ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant * * *."); ORCP 82 A(6) ("The court may waive * * * any security or bond provided by these rules * * * upon an ex parte showing of good cause and on such terms as may be just and equitable."). *See also State v. La Follette,* 100 Or 1, 9, 196 P 412 (1921) ("[The predecessor to ORCP 82] in effect declares that judges and courts are without jurisdiction and therefore without power to allow temporary injunctions unless an undertaking is first filed."); *Bruce v. Maurais,* 69 Or App 267, 271, 684 P2d 1243 (1984) (holding that a trial court's issuance of a preliminary injunction order without an undertaking makes the order void and unenforceable by the court).

[4] Paragraph 7.05 of the CC&Rs provides, in part:

"Should the [plaintiff] employ counsel to enforce any of these covenants, conditions or restrictions, by reason of such violation, all costs incurred in such enforcement, including a reasonable fee for counsel, shall be paid by the Owner of such Lot or Lots and the [plaintiff] shall have a lien upon such Lot or Lots to secure payment of all such accounts."

was appropriate, because the provision applies only to "enforcement" of the CC&Rs arising from a "violation." To enforce means to "constrain" or "compel." *Webster's Third New Int'l Dictionary*, 751 (unabridged ed 1993). Thus, the provision arguably employs a term similar in effect to "prevailing party," because enforcement of the CC&Rs necessarily is the equivalent of compelling compliance with them by prevailing in the action. *See Carlson v. Blumenstein*, 293 Or 494, 499-500, 651 P2d 710 (1982) (in absence of evidence that parties intended otherwise, court will apply statutory meaning of "prevailing party" to private agreement referring to "successful party").

■      Moreover, even if the attorney fee provision does not employ a term similar to "prevailing party," it nonetheless is inapplicable in this action, by its own terms, unless plaintiff *enforced* the CC&Rs. Plaintiff asserts that the court's conclusion that "[p]laintiff has a substantial likelihood of success on the merits at trial," which is a part of the preliminary injunction order, constitutes such an enforcement. However, we reiterate that the order never became effective, because plaintiff did not post the required bond. *See Conley and Conley*, 97 Or App 134, 137, 776 P2d 860 (1989) ("[A] statement from the bench does not constitute an order or a judgment until it appears in a written order or judgment.") In addition, the court's conclusion that plaintiff had a substantial *likelihood* of success was not equivalent to enforcement of the CC&Rs. Before the court ultimately could compel defendants' compliance with the CC&Rs, plaintiffs had to post the bond and further judicial proceedings were required. Because plaintiff did not enforce the CC&Rs, there was no contractual basis for an attorney fee award.

Finally, plaintiff argues that, regardless of whether the order granting the preliminary injunction actually became effective, the underlying action was the catalyst for defendants' compliance with the CC&Rs. Plaintiff relies on *Little Rock School Dist. v. Special School Dist. 1*, 17 F3d 260, 262-63 (8th Cir 1994), in which the Eighth Circuit stated:

> "Where a defendant voluntarily complies with a plaintiff's requested relief, thereby rendering the plaintiff's lawsuit moot, the plaintiff is a 'prevailing party' under [42 USC]

section 1988 if his suit is a catalyst for the defendant's voluntary compliance and the defendant's compliance was not gratuitous, meaning the plaintiff's suit was neither frivolous, unreasonable nor groundless." *Id.* at 262 (citation omitted).

Plaintiff argues that "[t]he real issue is what was the result obtained as a result of the suit brought by the Plaintiff in this litigation," not whether the trial court's order "granted formal relief."

For the following reasons, we disagree. First, plaintiff points to, and we can find, no Oregon decision that adopts the "catalyst theory" for determining a party's entitlement to attorney fees. This court has mentioned the catalyst theory in only two cases, neither of which adopted that test. *See Siverly v. Young & Morgan Trucking Co.*, 172 Or App 282, 285, 17 P3d 579 (2001) (noting that the plaintiff did not argue that her federal employment discrimination claim was the catalyst that caused the defendant to change its discriminatory policies); *see also Freedland v. Trebes*, 162 Or App 374, 378 & n 2, 986 P2d 630 (1999) (discussing, but not adopting, catalyst theory where the parties did not dispute that the trustee was "successful," as that term is used in ORS 128.155, in an accounting action against the former trustee).

Second, we need not decide here whether plaintiff's theory is viable,[5] because there is no evidence that defendants abandoned their original plans and built a house approved by the ACC as a result of plaintiff's claim. The only evidence in the record on this issue, an affidavit from Tamara Hayworth, cuts against plaintiff's theory. Hayworth attested that:

"14. By April of [1999], it had become apparent that there is a great deal of hostility felt toward us by the existing residents of the Conifer Ridge subdivision. We came to the conclusion that even if we prevailed in this case and were allowed to build our house as we wanted based on the original design, we might never feel comfortable or happy living there. Also, we had [a] significant portion of our

---

[5] Among other concerns, plaintiff does not explain how the catalyst theory can be reconciled with the applicable attorney fee provision, which, as we have already discussed, requires enforcement of the CC&Rs following their violation.

financial resources tied up in the property. We did not feel we could afford to leave our resources tied up * * * for as long as it appeared the case might continue on.

"15. We decided that regardless of fairness and whether we are legally correct, the main thing we wanted to do was to put ourselves in a position where we could start over in a new location if we chose. We wanted to at least start building so we could complete a house and be in a position where we could sell it. With that in mind, the design of the house became less important to us. We were willing to accept a design that could be built and marketed as soon as possible.

"16. We continue to believe that the ACC acted improperly in rejecting our original proposal. We simply decided that for the sake of our family and our financial situation, it was most important to take action that would put us in a position to sell our property and move on."

Although plaintiff argues that Hayworth's explanation is self-serving and unlikely, it offers no evidence to the contrary. The trial court did not err in denying plaintiff's claim for attorney fees.

Affirmed.