# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 1, 2009               Decided August 4, 2009

No. 08-7046

ISMAIL ABDUL MALIK, ALSO KNOWN AS ROY THOMAS,
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-01374-RMC)

*David J. Shaw*, Student Counsel, argued the cause for *amicus curiae* in support of appellant. With him on the briefs were *Steven H. Goldblatt*, appointed by the court, *Cecily E. Baskir*, Supervising Attorney, and *Rupal M. Doshi*, Student Counsel.

*Lori L. Voepel* argued the cause for appellees. With her on the brief were *Daniel P. Struck*, *Paul J. Maloney*, and *William J. Carter*. *Mariana del Valle Bravo* entered an appearance.

Before: GARLAND, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: *Pro se* appellant Ismail Malik, a District of Columbia prisoner, sued the District of Columbia, the Corrections Corporation of America (CCA), and TransCor America, alleging that the defendants violated his rights under the Eighth Amendment. The district court granted summary judgment in favor of the District and CCA on the ground that Malik had failed to exhaust his administrative remedies, and in favor of TransCor on the ground that Malik had failed to respond to TransCor's summary judgment motion. We reverse the former decision because CCA and the District had no administrative remedies for Malik to exhaust. We reverse the latter because the *pro se* plaintiff was plainly and reasonably confused over whether TransCor's motion remained pending.

I

Malik is a District of Columbia prisoner. The District contracted with CCA, a private company, to house District of Columbia prisoners at CCA's Northeast Ohio Correctional Center and Central Arizona Detention Center. TransCor, a CCA subsidiary, was responsible for transporting District inmates between the two CCA facilities. *See Malik v. District of Columbia (Malik II)*, 538 F. Supp. 2d 50, 51 (D.D.C. 2008).

From July 2 through July 4, 2001, TransCor transported Malik (and other D.C. prisoners) on a forty-hour bus ride from CCA's Ohio facility to its facility in central Arizona. Malik contends that he was handcuffed at the waist with a belly chain, that the belly chain was attached to the chain of another inmate, and that all of the prisoners wore leg shackles. Those restraints made it impossible to use a restroom, forcing the prisoners to urinate and defecate on themselves. The restraints also precluded Malik from using an inhaler that he needed because

he was asthmatic. Malik further alleges that he was deprived of water during the trip. *See id.*; Compl. at J.A. 16-17; Letter from I. Malik to TransCor (July 27, 2001) (J.A. 178-79); Appellees' Br. 23.[1]

After arriving at the CCA facility in Arizona, Malik filed a grievance on July 12, 2001, requesting the address and telephone number of the CCA main office in order to pursue a civil action. J.A. 74. On July 18, CCA compliance coordinators responded, advising Malik as follows: "Transcor, not [CCA] staff, provided the transportation. This issue is out of this facilit[y's] control. . . . We are unable to further process your grievance . . . ." Memorandum from M. Sherman & C. Richey (July 18, 2001) (J.A. 75). The response gave Malik a name and address at TransCor and told him that he could send a complaint there. *Id.*

Thereafter, Malik filed two additional grievance forms requesting paperwork to file an administrative appeal. J.A. 78, 80. On July 27, Malik submitted an appeal to CCA, *see* J.A. 76, and on the same day sent TransCor a letter asking the company to process his grievance, *see* J.A. 178-79.[2] On August 14, 2001, the CCA warden/administrator responded to Malik's appeal, instructing Malik "to write to Transcor to file your grievance[;] CCA did not transport you." J.A. 76.

---

[1]Because the district court granted summary judgment against Malik, we "must view the evidence in the light most favorable" to him. *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

[2]TransCor states that it did not receive Malik's letter. Appellees' Br. 9. The district court found that this dispute raised a genuine issue of material fact. *Malik v. District of Columbia*, 512 F. Supp. 2d 28, 32 (D.D.C. 2007); *see infra* note 3.

On July 11, 2005, Malik brought suit against the District of Columbia, CCA, and TransCor in the United States District Court for the District of Columbia. His *pro se* complaint, filed pursuant to 42 U.S.C. § 1983, alleged that the defendants subjected him to cruel and unusual punishment during the forty-hour bus trip in violation of the Eighth Amendment. He also alleged that transporting officers said they were punishing him and the other prisoners because they had been members of a class action lawsuit against the District and CCA. Compl. at J.A. 18-19.

On February 12, 2007, the defendants filed a "Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment," contending that Malik had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Malik responded to the motion on March 30. On August 1, the defendants filed a second summary judgment motion, arguing on the merits that Malik had failed to establish any genuine issue of material fact that would allow him to demonstrate the elements of a claim under 42 U.S.C. § 1983. On August 24, 2007, Malik filed a motion for extension of time to reply to the second summary judgment motion, which the district court granted in part on September 5, giving Malik until September 25, 2007, to file his opposition.

On September 6, 2007 -- the day after the district court granted Malik's motion for an extension of time to reply to the second summary judgment motion -- the court issued an opinion granting the first summary judgment motion as to the District of Columbia and CCA only. The court granted the motion on the ground that Malik had failed to properly exhaust his administrative remedies by filing his first grievance one day later than CCA's grievance policy permitted. *Malik v. District of Columbia* (*Malik I*), 512 F. Supp. 2d 28 (D.D.C. 2007). The

court declined to grant summary judgment for TransCor on that ground, however, because the record showed there was a genuine issue of material fact as to whether Malik had sent a timely complaint letter to TransCor. *Id.* at 32; *see* FED. R. CIV. P. 56(c) (providing that summary judgment should be granted only if "there is no genuine issue as to any material fact").

On September 20, Malik filed a "Motion in Opposition to Defendant's Motion to Dismiss." The pleading evidenced Malik's confusion about the scope of the district court's September 6 opinion. Malik asked the district court to "reconsider its order of September 6, 2007," stating that the September 6 order came "19 days before a response [was] due," and objecting that "it appears the Court has decided the motions without awaiting a response from the Plaintiff." Pl.'s Mot. in Opp'n to Def.'s Mot. to Dismiss ¶¶ 4-6. Malik's pleading mentioned only the exhaustion issue raised in the first summary judgment motion; it did not mention any issue raised in the second.

TransCor filed four responses to Malik's September 20 pleading, including an opposition to Malik's request to reconsider the September 6 order. Malik responded to that opposition on October 23, 2007, again evidencing confusion about the import of the district court's September 6 opinion. He stated: "[N]otwithstanding the . . . extension of time, the court, on September 6, 2007, granted the defendants' motions in part and denied them in part. At any rate, the order was entered 19 days before a response was due." Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Reconsider the Court's Sept. 6, 2007 Order ¶ 4. He also charged that "[t]he court erred in entering an order of whatsoever type, nature, and kind before September 25, 2007," and that the court's September 6 opinion was "premature in every respect." *Id.* ¶ 5.

On March 10, 2008, the district court granted TransCor's second summary judgment motion, treating the motion as conceded because Malik had failed to respond. *Malik II*, 538 F. Supp. 2d at 53. Malik filed a timely appeal, and a special panel of this court appointed amicus curiae to present arguments in support of his position. Order, *Malik v. District of Columbia*, No. 08-7046 (D.C. Cir. Oct. 14, 2008). We review the district court's grant of summary judgment *de novo*. *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008).

II

We begin with the district court's grant of the defendants' first summary judgment motion in favor of the District of Columbia and CCA. The court granted the motion on the ground that Malik had failed to exhaust his administrative remedies.

The exhaustion provision of the PLRA provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," which includes "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Both CCA and the District rely on CCA's grievance policy to argue that Malik did not properly exhaust his administrative remedies. The CCA policy requires that grievances be filed within seven days of the incident being grieved. Richey Aff. ¶ 5. The bus trip about which Malik complained ended on July 4, 2001, but he did not file his first grievance until July 12 --

eight rather than seven days after the transfer. As a consequence, the defendants maintain that Malik failed to properly exhaust his administrative remedies.

The problem with this argument is that the same CCA grievance policy renders a complaint like Malik's nongrievable. Under the policy, "'grievable matters' include[] issues regarding the application of policies, rules and procedures; individual staff and inmate actions, including any denial of access to the grievance procedure; reprisals and retaliation against inmates for filing an appeal; loss of property; and any other matter relating to the conditions of care and supervision within the authority of CCA." *Id.* ¶ 6. But the policy also provides that "*[i]nstitutional transfers . . . are not grievable matters*." *Malik I*, 512 F. Supp. 2d at 30 (emphasis added); *see* Richey Aff. ¶ 6. In its briefs and at oral argument, CCA conceded what is apparent on the face of its policy: claims related to institutional transfers are not grievable. Appellees' Br. 26; Oral Arg. Recording at 11:40-12:15. Nonetheless, the district court concluded that "[t]he untimely filing of an inmate grievance alone supports the conclusion that Plaintiff failed to properly exhaust his administrative remedies." *Malik I*, 512 F. Supp. 2d at 32.

Although the PLRA requires prisoners to exhaust their administrative remedies before suing under § 1983, it reasonably requires exhaustion only of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). As we have previously held, the Act's exhaustion requirement does not apply in a case "in which there is no administrative process to exhaust." *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008). In such a case, "the PLRA does not prevent the prisoner from bringing his or her claim directly to the district court." *Id.* Accordingly, the fact that Malik filed his grievance one day later than CCA policy permits is irrelevant because Malik was not required to file a grievance at all.

While the defendants concede that Malik's Eighth Amendment claim regarding the conditions of his transport was not grievable, they contend that his complaint also included a retaliation claim -- which they maintain was grievable under CCA's policy. *See* Appellees' Br. 27; Richey Aff. ¶ 6 (stating that "'grievable matters' included . . . reprisals and retaliation against inmates for filing an appeal."). Even if defendants' characterization of Malik's complaint and CCA's policy were correct, that would not get them all the way home. When a complaint contains both exhausted and unexhausted claims, a court may dismiss only the latter. *See Jones v. Bock*, 549 U.S. 199, 219-21, 224 (2007). But it is not obvious that defendants have correctly construed either the complaint or the policy. Amicus contends that Malik's complaint should be read as asserting only an Eighth Amendment claim, with retaliation alleged merely as one motive -- not an unreasonable reading of the *pro se* complaint. Moreover, even if we were to construe the complaint as setting out a separate claim for retaliation, it is not evident that such a claim would have been covered by CCA's policy. The policy simply does not make clear the status of a claim for reprisal (a covered subject) that took place during an institutional transfer (a non-covered event). The parties submitted no evidence on this issue, the district court made no finding, and this court is an inappropriate place to make such an argument for the first time.

## III

As we have noted, the district court denied the defendants' first motion for summary judgment as to TransCor because it found there was a genuine dispute as to whether Malik had properly exhausted his administrative remedies under TransCor's grievance policy. The court granted the defendants' second summary judgment motion as to TransCor (the only defendant remaining at the time), however, on the ground that

Malik had conceded it. *Malik II*, 538 F. Supp. 2d at 52-53. In so holding, the court relied on Local Civil Rule 7(b), which provides that if an opposing party does not file an opposition to a summary judgment motion, "the Court may treat the motion as conceded." D.D.C. LOCAL RULE 7(b). We review the district court's application of Rule 7(b) for abuse of discretion. *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004); *F.D.I.C. v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997).

In *Fox v. Strickland*, we reversed an order of a district court dismissing the complaint of an incarcerated *pro se* plaintiff who had failed to file an opposition to a defendant's summary judgment motion. "'[A]s a bare minimum,'" we said, reiterating circuit precedent, "the district court should give the *pro se* imprisoned plaintiff 'fair notice of the requirements of the summary judgment rule.'" *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (quoting *Ham v. Smith*, 653 F.2d 628, 630 (D.C. Cir. 1981)). "That notice . . . should include an explanation that the failure to respond to an adverse party's summary judgment motion may result in the district court granting the motion and dismissing the case." *Id.*; *see Ham*, 653 F.2d at 630 (same); *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968) (same).

In its March 10, 2008, opinion granting the defendants' second motion for summary judgment as to TransCor, the district court observed that "[o]rdinarily [it] issues an Order to a *pro se* litigant to advise him of his obligation to file an opposition or other response to a summary judgment motion, to warn him of the potential consequences for his failure to do so, and to set a deadline for such filing." *Malik II*, 538 F. Supp. 2d at 53 n.2. As the court also acknowledged, "[t]he record shows that [it] did not issue such an order in this case." *Id.* Nonetheless, the court concluded that no order was required because it had advised Malik of his obligations in February,

when the defendants filed their first summary judgment motion, and because Malik had been a plaintiff in other civil actions in the district court. *Id.*

But the problem here is not simply that Malik lacked notice that he had to respond to TransCor's summary judgment motion. Rather, it is that he erroneously thought the district court had granted both the first (February) and second (August) motions on September 6 -- before his response to the second motion was due. This is apparent from Malik's filings. On September 5, the district court granted him an extension until September 25 to reply to the second motion for summary judgment. One day later, on September 6, the court granted the defendants' first motion. In his filing on September 20, Malik objected that "it appears the Court has decided the *motions* without awaiting a response from the Plaintiff," and that it did so "19 days before a response [was] due." Pl.'s Mot. in Opp'n to Def.'s Mot. to Dismiss ¶¶ 4-5 (emphasis added). In his filing of October 23, Malik registered the same objection:

> In an order dated September 5, 2007, the court granted the plaintiff an extension of time until September 25, 2007, to file an opposition to the defendants' motions. However, notwithstanding the foregoing extension of time, the court, on September 6, 2007, granted the defendants' motions in part and denied them in part. At any rate, the order was entered 19 days before a response was due.

Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Reconsider ¶ 4. "The court erred," Malik declared, "in entering an order of whatsoever type, nature, and kind before September 25, 2007." *Id.* at ¶ 5. In his view, this rendered the September 6, 2007, opinion "premature in every respect." *Id.*

11

Malik's confusion was not unfounded, given the complicated sequence of motions and orders set forth in Part I above. The defendants insist that Malik should have known that the district court's September 6 decision granted only their February motion because "the court's decision addressed only the exhaustion issues, which were raised solely in the [February] Motion for Judgment on the Pleadings." Appellee's Br. 10. Because the defendants' August motion was a "Motion for Summary Judgment" and not for "Judgment on the Pleadings," defendants maintain that Malik should have realized that the September 6 decision -- which assertedly ruled "only on the Motion for Judgment on the Pleadings" -- did not resolve it. *Id.* at 36.

The flaw in this argument is that the full title of the defendants' February motion was "Motion for Judgment on the Pleadings *or, in the Alternative, for Summary Judgment*." Moreover, the court's September 6 Memorandum Opinion only discussed the standard for "summary judgment"; it did not address the standard for granting judgment on the pleadings. *See Malik I*, 512 F. Supp. 2d at 29. Thus, there was nothing in the distinction between summary judgment and judgment on the pleadings to dispel the confusion exhibited by the plaintiff.

In light of both the objectively confusing procedural history and the subjective confusion that Malik plainly manifested, "it was incumbent upon the district court . . . to inform [Malik] of the pendency of the defendants' motion and to accord him an 'explanation of the risks attending failure to respond.'" *Fox*, 837 F. 2d at 509 (quoting *Ham*, 653 F.2d at 630). Such clarification would have imposed little burden on the litigation, but it would have constituted the "fair notice" that *Fox* requires. *Id*. "[B]ecause the district court dismissed [Malik's] complaint without providing him" the requisite notice, we reverse "the

dismissal order and remand the case to the district court for further proceedings." *Id.*[3]

IV

For the foregoing reasons, we reverse the district court's grants of summary judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[3]TransCor urges that if we find, as we have, "that the district court erred in granting summary judgment on the ground that Malik conceded Defendants' Motion on the merits," we should nonetheless affirm on the ground that Malik failed to exhaust his administrative remedies under TransCor's grievance policy. Appellees' Br. 15. Although the district court found that TransCor did have an informal grievance policy applicable to complaints concerning conditions of transport, it also determined that there was a genuine issue of material fact as to whether Malik sent TransCor a complaint letter in compliance with that policy. *Malik I*, 512 F. Supp. 2d at 32. TransCor asserts that Malik's claim to have mailed the letter was not credible, but such an assertion generally provides no warrant for reversing the denial of summary judgment by a district court. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (noting that, in ruling on a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (same).