# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 7, 2015          Decided June 30, 2015

No. 12-5361

DARRELL JAMES DEBREW,
APPELLANT

v.

MICHAEL ATWOOD, BUREAU OF PRISONS TRUST FUND
MANAGER, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00650)

*Michael J. Satin* argued the cause for the amicus curiae in support of appellant. *Anthony F. Shelley*, appointed by the court, and *Timothy P. O'Toole* and *Michael N. Khalil* were with him on the briefs.[*]

*Darrell J. DeBrew*, pro se, filed the brief for appellant.

*Kenneth A. Adebonojo*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Ronald C.*

---

[*] The Court thanks the *amicus curiae* and his colleagues for their able assistance.

*Machen*, *Jr.*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: Darrell James DeBrew, an inmate at a federal prison, alleges both that the Bureau of Prisons (BoP) failed adequately to respond to his requests for records under the Freedom of Information Act (FOIA) and that several policies adopted by the BoP violate the Constitution of the United States. The district court granted summary judgment in favor of the BoP on DeBrew's FOIA claims and dismissed his constitutional claims. We summarily affirmed the district court's disposition of some of DeBrew's claims and appointed an amicus curiae to brief and argue the six claims that remained. *DeBrew v. Atwood*, No. 12-5361, 2014 WL 590663 (D.C. Cir. Jan. 28, 2014). For the reasons that follow, we affirm in part and vacate in part the judgment of the district court and remand the case to that court for further proceedings consistent with this opinion.

## I. Analysis

Before us are three claims the BoP violated the disclosure requirements of the FOIA and three claims that policies of the BoP violate the Constitution.

## A. FOIA Claims

DeBrew contends the BoP failed to conduct an adequate search in response to his requests for (1) records concerning

"Code 408" on the BoP's list of prohibited acts, which forbids an inmate from "[c]onducting a business," 28 C.F.R. § 541.13 (2007)[**]; (2) transcripts of his telephone conversations; and (3) records concerning the "DNA Act."

1.    Code 408

In 2007 DeBrew filed a request under the FOIA for "All documentation for making Conducting a Business (408) a prohibited act." In response to his request, the BoP released a "program statement," which is available to prison staff, inmates, and the public, that summarizes the policy. DeBrew appealed to the Office of Information and Privacy (OIP) of the Department of Justice, which determined the BoP had conducted an adequate search.

DeBrew argues the BoP's response was inadequate because he did not receive records generated by the agency in the course of deciding to adopt the rule prohibiting an inmate from conducting a business. The BoP moved for summary judgment and submitted the declaration of an employee describing DeBrew's request and the program statement released in response to the request. The district court denied the motion for summary judgment because "the BoP's declarant only states the result of the search — a program statement regarding the inmate discipline — without offering a description of either the agency's interpretation of the request or the method by which staff conducted the search." *DeBrew v. Atwood*, 847 F. Supp. 2d 95, 102 (D.D.C. 2012). The BoP then filed a renewed motion for summary judgment accompanied by supplemental declarations of the same employee. The third supplemental declaration explains

---

[**] The current list of prohibited acts designates "[c]onducting a business" as Code 334. 28 C.F.R. § 541.3.

DeBrew's request was assigned to two employees of the BoP and describes why they were chosen to conduct the search. One of the employees concluded the only relevant document was the program statement previously released to DeBrew, and the other employee located 24 additional documents, all of which had been published in the Federal Register. Based upon the third supplemental declaration, the district court "conclude[d] that the agency's searches for records responsive to plaintiff's request for information about Code 408 were reasonable under the circumstances" and granted summary judgment for the BoP. *DeBrew v. Atwood*, 889 F. Supp. 2d 42, 46 (D.D.C. 2012).

In order to obtain a summary judgment "the agency must show beyond material doubt … that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *see Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) ("Summary judgment may be based on affidavit, if the declaration sets forth sufficiently detailed information for a court to determine if the search was adequate" (internal quotation marks omitted)).

As the amicus points out, the BoP's third supplemental declaration is not sufficiently detailed to support a summary judgment because it does not disclose the search terms used by the BoP and the type of search performed. "A reasonably detailed affidavit, setting forth the search terms and the type of search performed … is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search

was adequate in order to grant summary judgment." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (explaining a declaration is insufficient to allow us to determine the adequacy of a search if it "merely identifies the three directorates that were responsible for finding responsive documents without identifying the terms searched or explaining how the search was conducted" (internal quotation marks and alterations omitted)).

Because we cannot determine whether the BoP conducted an adequate search based upon the declarations in the record, we vacate the judgment of the district court on this claim and remand the case to the district court for further proceedings. "On remand, the district court may order [the BOP] to submit a reasonably detailed affidavit upon which the reasonableness of its search can be judged." *Oglesby*, 920 F.2d at 68.

2.  Telephone conversations

In 2007 DeBrew filed a request under the FOIA for "copies of all [his] telephone records up to the present starting from November 1994." The BoP released a list of the telephone numbers DeBrew had called from prison. DeBrew appealed to the OIP and explained that, in addition to the call logs, he wanted recordings of his telephone conversations. The OIP replied the BoP no longer had recordings of DeBrew's conversations. The district court entered summary judgment for the BoP on the ground that "an agency does not violate the FOIA by failing to produce records which had been destroyed." *DeBrew*, 847 F. Supp. 2d at 102.

DeBrew argues the BoP did not conduct an adequate search for recordings of his telephone conversations. "The FOIA provides a claimant with a remedy only against an

agency that has 'improperly withheld' a record." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting 5 U.S.C. § 552(a)(4)(B)). "If the agency is no longer in possession of the document, for a reason that is not itself suspect, then the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it." *Id.*; *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The [FOIA] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained"). DeBrew believes the BoP has recordings of his telephone conversations because such recordings are used to investigate and prosecute inmates and because the BoP has previously released transcripts of another inmate's conversations. *See, e.g.*, *Smith v. DOJ*, 251 F.3d 1047, 1048 (D.C. Cir. 2001). Although the BoP monitors inmates' telephone calls, *see* 28 C.F.R. § 540.102, we do not think it is "suspect" that the agency says it did not retain recordings of DeBrew's conversations, *SafeCard Servs.*, 926 F.2d at 1201. DeBrew has not pointed to any evidence showing the BoP has a policy or practice of retaining indefinitely the recordings of an inmate's telephone calls if the recordings are not being used in an investigation or prosecution. In the absence of such evidence, the BoP is entitled to summary judgment. *See id.* at 1200 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents" (internal quotation marks omitted)).

We agree with the district court that the BoP did not violate the disclosure requirements of the FOIA by failing to produce recordings of DeBrew's telephone conversations because the agency is not obligated, nor is it able, to disclose

a record it does not have. We therefore affirm the district court's judgment in favor of the BoP on this claim.

### 3. DNA Act

In 2008 DeBrew filed a request under the FOIA for "All memos concerning [the] DNA Act," referring to the DNA Analysis Backlog Elimination Act of 2000, Pub. L. No. 106-546, 114 Stat. 2726. The BoP informed DeBrew his request did not adequately describe a document and advised him either to submit a more precise request or to resubmit his request if he disagreed with the agency's determination. According to the declaration of a BoP employee, DeBrew "has not followed-up with the Bureau concerning this request and the Bureau's response." There is no evidence in the record that DeBrew resubmitted his request to the BoP or appealed its determination to the OIP. The district court granted summary judgment for the BoP because DeBrew "failed to exhaust his administrative remedies with respect to his request for information about the DNA Act prior to filing this lawsuit." *DeBrew*, 847 F. Supp. 2d at 104. On appeal, DeBrew argues first that the BoP failed to conduct an adequate search — which he asserts "trumps" the defendants' contention that he did not exhaust the administrative remedies available to him — and second that the BoP failed to notify him of his right to appeal its interpretation of his request.

As the district court held, DeBrew's failure to exhaust his administrative remedies precludes the courts from reviewing whether the BoP conducted an adequate search. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Requiring DeBrew to follow up with the BoP before filing suit is consistent with, indeed essential to, accomplishing the "purposes of exhaustion" by "preventing premature interference with agency processes." *Hidalgo v. FBI*, 344 F.3d 1256, 1259

(D.C. Cir. 2003) (quotation marks omitted). The BoP invited DeBrew either to submit a revised request that more precisely described the documents he seeks or to resubmit his request. A requester who is dissatisfied with the BoP's determination may also appeal to the OIP. *See* 28 C.F.R. § 513.66. Rather than pursue any of these options, however, DeBrew filed suit.

We have observed before that "permitting [a plaintiff] to pursue judicial review without benefit of prior OIP consideration would undercut the purposes of exhaustion." *Hidalgo*, 344 F.3d at 1259 (quotation marks omitted). Furthermore, because the FOIA provides for an administrative appeal, "the FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Id.*

Because DeBrew did not exhaust the administrative remedies available to him before filing suit, we affirm the judgment of the district court with respect to his claim that the BoP did not conduct an adequate search in response to his request for records about the "DNA Act."

B.  Constitutional Claims

DeBrew asserts the BoP and several of its officials violated the Constitution of the United States by (1) retaining interest earned on money in inmates' deposit accounts, (2) charging prices that are "too high" for items from the prison commissary and for telephone calls, and (3) prohibiting inmates from conducting a business. The individual defendants are the current and former directors and trust fund managers of the BoP, all of whom DeBrew has sued in both their official and their personal capacities. DeBrew's complaint requests declaratory and injunctive relief and money damages in connection with each constitutional claim.

On the same day he filed his complaint, DeBrew filed a motion to certify a class and to appoint counsel to represent the class. The defendants moved to dismiss DeBrew's constitutional claims, and DeBrew opposed the motion and asked the court for permission to amend his complaint. The district court dismissed the claims and denied DeBrew's motion for leave to file an amended complaint. Before considering DeBrew's constitutional claims, we must address the threshold defense of sovereign immunity raised by the defendants.

1.  Sovereign Immunity

As the defendants point out, it is well established that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In § 702 of the Administrative Procedure Act, the Congress waived sovereign immunity with respect to certain actions:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. We have "repeatedly" and "expressly" held this "waiver of sovereign immunity applies to any suit whether under the APA or not" because "[t]here is nothing in … § 702 that restricts its waiver to suits brought under the APA." *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (internal quotation marks omitted).

The defendants assert DeBrew cannot rely upon § 702 because he "explicitly stated in his complaint and his proposed amended complaint that he was alleging a *Bivens* claim for money damages … and is now arguing for the first time that he sought injunctive relief under the APA." Appellees' Br. at 25–26. We find this assertion baffling: As DeBrew and the amicus point out, DeBrew plainly demanded declaratory and injunctive relief from the BoP and the individual defendants in their official capacities. He styled his complaint a "Suit for Declaratory and Injunctive Relief & Class Action" and specifically requested that relief in connection with each constitutional claim. In his opposition to the defendants' motion to dismiss, DeBrew quoted § 702 and correctly explained that the "[w]aiver of Sovereign Immunity for equitable relief is established under the Administrative Procedure Act."

DeBrew also requested money damages but, as his complaint and briefs explain, he seeks damages only from the individual defendants and only in their personal capacities. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). We address DeBrew's *Bivens* claims below. For now, we hold sovereign immunity does not bar DeBrew's claims for declaratory and injunctive relief against the BoP and the individual defendants in their official capacities.

    2. Constitutional claims

        a. Retention of interest

DeBrew claims the BoP and its officials violated the Takings and Due Process Clauses of the Fifth Amendment to the Constitution of the United States by retaining interest earned on money in inmates' deposit accounts.

The defendants argue DeBrew lacks Article III standing to pursue this claim because he has not alleged he suffered an injury in fact. We think DeBrew clearly asserts he experienced a "concrete and particularized" harm. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As DeBrew's brief explains, the BoP provides each inmate with an account into which he or others may deposit money. *See* 28 C.F.R. § 506.1. We know DeBrew has such an account because he filed a copy of his account statement in support of his motion to proceed *in forma pauperis*. DeBrew alleges the BoP invests the money held by inmates in their deposit accounts and retains the interest, and he contends this practice violates the Fifth Amendment because the inmates have a property interest in the interest earned on their money. In other words, DeBrew claims the defendants took money that belongs to him, which is a "concrete and particularized" injury. The cases relied upon by the defendants — such as those describing the principle of "taxpayer standing" — are inapposite because they involve plaintiffs who raised generalized grievances about the way the government spent money it had lawfully obtained, rather than plaintiffs who alleged the government unlawfully took their money. *See, e.g.*, *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007) (holding plaintiffs do not have standing to assert "their claim … that, having paid lawfully collected taxes into the Federal Treasury at some point, they have a continuing, legally cognizable interest in ensuring that those funds are not *used* by the Government in a way that violates the Constitution").

The defendants next argue DeBrew failed to exhaust the administrative remedies available to him before he filed suit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory

under the PLRA and that unexhausted claims cannot be brought in court"). The district court dismissed the claim on this ground. *DeBrew*, 847 F. Supp. 2d at 108–10.

The BoP has established a four-part process for resolving an inmate's grievance. First, the inmate must "present an issue of concern informally to staff." 28 C.F.R. § 542.13(a). Second, if the issue is not resolved informally, then the inmate may submit to the Warden "a formal written Administrative Remedy Request." *Id.* § 542.14(a). Third, "An inmate who is not satisfied with the Warden's response may submit an Appeal" to the Regional Director "within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). The inmate must attach a copy of the form he submitted to the Warden and a copy of the Warden's response. *Id.* § 542.15(b)(1). Fourth, "An inmate who is not satisfied with the Regional Director's response may submit an Appeal … to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* § 542.15(a). The inmate must attach a copy of the forms he submitted to the Warden and the Regional Director and a copy of their responses. *Id.* § 542.15(b)(1).

DeBrew completed the first three steps in this four-part process by presenting to prison staff, the Warden, and the Regional Director his contention that the defendants unlawfully retained interest earned on money in inmates' deposit accounts. According to the BoP, the Regional Director denied his request for an administrative remedy on September 7, 2007. It is unclear, however, whether DeBrew received the Regional Director's response. DeBrew had filed several unrelated requests for an administrative remedy, four of which were denied by the Regional Director on September 7, 2007. On September 15, 2007 DeBrew received at FPC Petersburg, where he was incarcerated at the time, two letters

from the Regional Director. Prudently, however, he did not open the letters because he was scheduled to move to FPC Butner the next day, his possessions had already been packed, and he knew he would not be allowed to carry the letters on the bus to Butner. Instead, DeBrew asked a corrections officer to place the two unopened letters from the Regional Director back into the prison mail system so they would be forwarded to his new address at Butner.

According to DeBrew, the two letters from the Regional Director never arrived at Butner. On October 2, 2007 DeBrew informed the Administrative Remedy Clerk at Butner that the letters had not been forwarded to him. The Clerk replied that the responses were "being routed from the Region" and would be delivered to DeBrew when they arrived. On October 4, 2007 DeBrew sent a letter to the mailroom at Petersburg inquiring about the letters from the Regional Director, but he did not receive a reply.

On October 22, 2007 DeBrew filed an appeal with the General Counsel even though he had not received the Regional Director's response. The General Counsel rejected DeBrew's appeal for two reasons. First, the appeal was untimely because it was not received by the General Counsel within 30 days after the Regional Director had signed his response on September 7, 2007. *See* 28 C.F.R. § 542.15(a). In this regard, the General Counsel directed DeBrew to supply "staff verification on BoP letterhead documenting that the untimely filing of th[e] appeal was not [his] fault." Second, the appeal was defective because DeBrew did not attach a copy of the Regional Director's response. *See id.* § 542.15(b)(1).

On December 10, 2007 DeBrew filed another appeal to the General Counsel explaining he had not received the

Regional Director's response. He argued his first appeal was timely under a BoP rule providing "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. The Regional Director had previously informed DeBrew it would issue a response by October 9, 2007. He therefore regarded the absence of a response from the Regional Director by October 9 as a denial, and he timely filed his appeal to the General Counsel on October 22. Although DeBrew acknowledged it would be "impossible for staff to verify that [he] didn't receive a response" from the Regional Director, in order to demonstrate he had not been receiving his mail in a timely manner after he moved to Butner, he attached a letter from his Correctional Counselor explaining it had taken 16 days for the General Counsel's previous response to reach him. The General Counsel again rejected his appeal, this time solely on the ground that DeBrew had failed to attach a copy of the Regional Director's response; the General Counsel did not again maintain DeBrew's appeal was untimely.

In January 2008 DeBrew requested a copy of the Regional Director's response from an official at Butner and an official at the BoP's Regional Office but neither one provided the document. On February 7, 2008 DeBrew filed a third appeal to the General Counsel describing his efforts to locate the Regional Director's response. The General Counsel again rejected the appeal solely because DeBrew did not attach a copy of that response.

The district court concluded DeBrew failed to exhaust the administrative remedies available to him both because his appeal to the General Counsel was untimely and because he did not attach a copy of the Regional Director's response. *DeBrew*, 847 F. Supp. 2d at 109. We disagree with the

district court's conclusion that DeBrew's appeal to the General Counsel was untimely. Although the General Counsel rejected DeBrew's first appeal for that reason, he did not rely upon that ground in rejecting DeBrew's second and third appeals. A BoP rule requires the General Counsel to provide the reason for rejecting an appeal. *See* 28 C.F.R. § 542.17(b). Because the General Counsel did not reject DeBrew's second and third appeals on the ground they were untimely, we must infer he either agreed with DeBrew's argument that the appeal was timely or decided to accept the appeal even though he thought it was late. *See* 28 C.F.R. § 542.15(a) ("When the inmate demonstrates a valid reason for delay, these time limits [for filing an appeal] may be extended").

The General Counsel rejected all three of DeBrew's appeals because he did not attach the Regional Director's response. The PLRA requires "proper exhaustion," which means an inmate must "compl[y] with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). The statute, however, requires an inmate to exhaust only "such administrative remedies as are available" before filing suit. 42 U.S.C. § 1997e(a); *see Malik v. District of Columbia*, 574 F.3d 781, 785 (D.C. Cir. 2009). In other words, the PLRA does not bar an inmate from suing before he exhausts an administrative remedy if that remedy is not actually "available" to him. An administrative remedy is actually "available" to an inmate only if it is "present or ready for immediate use," "accessible," or "obtainable." *Merriam-Webster's Collegiate Dictionary* 84 (11th ed. 2004); *see also Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) (holding a remedy is "available" under the PLRA when it is "'capable of use; at hand'" (quoting *Webster's II, New Riverside Univ. Dictionary* 141 (1994)); *accord Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

As the amicus contends, appeal to the General Counsel clearly was not "available" to DeBrew because he could not obtain a copy of the Regional Director's response. It is impossible to know even whether DeBrew received the Regional Director's response to this claim because the Regional Director denied all four of his appeals on September 7, 2007, but DeBrew received only two letters from the Regional Director. Even if one of those letters was the response to this claim, as we have seen, DeBrew reasonably relied upon the prison mail system to forward it to his new address at Butner. A BoP regulation requires a prison official to forward mail to an inmate's new address for 30 days after he is transferred, but that did not happen in this case. *See* 28 C.F.R. § 540.25(f). When DeBrew had not timely received the Regional Director's response at Butner, he dutifully attempted to obtain a copy by contacting officials at Petersburg, at Butner, and at the Regional Office. DeBrew informed these officials they would find a copy of the response in the Administrative Remedy Index. A BoP regulation provides "[i]nmates … may request access to Administrative Remedy indexes and responses …. Each institution shall make available its index, and the indexes of its regional office and the Central Office." 28 C.F.R. § 542.19. Yet each of the officials he contacted failed to send DeBrew a copy of the Regional Director's response from the Administrative Remedy Index. For example, when DeBrew asked his Correctional Counselor at Butner for the document, she advised him "to write to the Regional Office" even though, according to the BoP's regulation, "[e]ach institution shall make available … the index of its regional office." *Id.*

At oral argument the defendants asserted DeBrew should have asked his Correctional Counselor for a "staff certification" explaining to the General Counsel that he could not obtain a copy of the Regional Director's response. The

defendants have not, however, identified any regulation, "program statement," or other document that would have advised DeBrew to take this step. Furthermore, the record shows DeBrew conferred with a Correctional Counselor at Butner on at least two occasions. On the first occasion, he gave DeBrew a letter explaining it took 16 days for DeBrew to receive the General Counsel's letter rejecting his first appeal. On the second occasion, DeBrew asked a Correctional Counselor to retrieve a copy of the Regional Director's response from the Administrative Remedy Index, which she failed to do. The defendants suggest no other way in which DeBrew could have complied with the General Counsel's requirement that he attach the Regional Director's response in order to perfect his appeal. Under these circumstances, the remedy of an appeal to the General Counsel simply was not "available" to DeBrew. *See Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (holding the plaintiff exhausted all "available" administrative remedies because "[t]he Bureau's failure to deliver the Regional Director's response to [the plaintiff] … prevented him from submitting that response" with his appeal to the General Counsel); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) ("If prison employees refuse to provide inmates with [the required] forms when requested, it is difficult to understand how the inmate has any available remedies").

Finally, the defendants urge us to affirm the district court's order dismissing this claim on the alternative ground that DeBrew does not have a property interest in the money allegedly retained by the BoP. *See Young v. Wall*, 642 F.3d 49, 51 (1st Cir. 2011) ("Weighing in on an issue that has split the circuits, we conclude that prison inmates lack a constitutionally protected property right in interest not yet paid" on the money held in their prison accounts); *but see Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1201 (9th

Cir. 1998) (holding inmates "possess a constitutionally cognizable property interest" in the interest earned on money held in their prison accounts).  Because the district court did not reach this argument, "we will follow our usual (although hardly universal) practice of declining to address arguments unaddressed by the district court" and leave it to the district court on remand to consider this issue in the first instance. *Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012).

We believe DeBrew exhausted all the administrative remedies "available" to him with respect to his claim that the defendants unlawfully retained interest earned on money held in inmates' deposit accounts.  We therefore vacate the district court's order insofar as it dismisses this claim and remand this aspect of the case to the district court for further proceedings.

   b. Prices for commissary items and telephone calls

DeBrew's second constitutional claim is that the defendants violated the Eighth Amendment to the Constitution of the United States by charging excessively high prices for items sold by the prison commissary and for telephone calls.  The district court dismissed this claim as well on the ground that DeBrew failed to exhaust the administrative remedies available to him.  *DeBrew*, 847 F. Supp. 2d at 109.  DeBrew's efforts to exhaust this claim were identical to his efforts to exhaust his claim that the BoP unlawfully retained interest generated by the money deposited in inmates' accounts.  For the reasons set forth in the previous section, therefore, we conclude that appeal of this grievance to the General Counsel was not "available" to DeBrew.

Unlike the claim discussed in the previous section, however, this claim was dismissed by the district court also on the alternative ground that DeBrew failed to "state a claim

of constitutional significance." *DeBrew*, 847 F. Supp. 2d at 111 (quotation marks omitted). We agree with the district court's decision to dismiss the claim on this ground.

DeBrew's complaint alleges "[a]ll commissary items are sold at the highest mark up possible which is the suggested retail price" and the BoP charges "extraordinarily high rates" for placing a telephone call. These allegations are insufficient to state a plausible claim for relief under the Eighth Amendment because that amendment does not guarantee the right of an inmate to purchase a good or service at a particular price. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("The Constitution … does not mandate comfortable prisons and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (internal quotation marks and citations omitted)); *see also French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) ("[T]here is simply no legal basis for a demand that inmates be offered items for purchase at or near cost").

Therefore, we affirm the order of the district court dismissing DeBrew's claim that the prices charged for commissary items and telephone calls are "too high."

### c. Conducting a business

Third, DeBrew claims the BoP's rule prohibiting an inmate from conducting a business violates the First and Fifth Amendments to the Constitution of the United States. The rule, which is presently designated Code 334 on the BoP's list of prohibited acts, forbids an inmate from "[c]onducting a business" or "conducting or directing an investment transaction without staff authorization." 28 C.F.R. § 541.3. The district court did not explain why it dismissed this claim.

The only argument advanced by the defendants is that DeBrew failed to exhaust the administrative remedies available to him before filing suit. Although we do not have the benefit of the district court's analysis, we think it clear from the record that DeBrew exhausted the administrative remedies available to him.

DeBrew has written and published several novels during his time in prison. In 2009 a BoP official determined DeBrew had violated Code 334 when he received in the mail a royalty check from his publisher. The official returned the check to the publisher rather than depositing it in DeBrew's account. DeBrew used the BoP's four-part process for resolving an inmate's grievance to urge the agency to expunge the "incident report" showing he had violated the rule. He argued, among other things, that the rule prohibiting an inmate from conducting a business "violates [the] First and Fourteenth Amendment Rights of Inmates." In his appeal to the General Counsel, DeBrew devoted four paragraphs to developing his argument that Code 334 is unconstitutional.

A declaration prepared by an employee of the BoP acknowledges DeBrew raised the argument that the "disciplinary action violates [the] First and Fourteenth Amendments." The declarant nevertheless concludes DeBrew did not avail himself of his administrative remedies because the "issue was presented in light of the specific facts of the inmate discipline action." As we read this rather cryptic statement, the declarant thinks DeBrew failed to exhaust his claim that Code 334 is unconstitutional because he presented it as an argument why he should not have been punished for violating the rule rather than presenting it as a separate grievance. The defendants rely upon this statement, but they offer no support for the proposition that an inmate cannot exhaust an argument that a BoP rule is

unconstitutional by presenting the argument in response to a determination that the inmate violated the rule. Nor can we imagine any sensible reason for that proposition.

We vacate the district court's order insofar as it dismisses DeBrew's claim that Code 334 is unconstitutional and remand this aspect of the case to the district court for further proceedings on this claim.

3. *Bivens* liability, appointment of counsel, and class certification

There are three additional issues we have yet to address either in this opinion or in our earlier order granting in part the defendants' motion for summary affirmance. They are the liability of the individual defendants in their personal capacities, DeBrew's motion to appoint counsel, and his motion to certify a class, to which we now turn.

a. *Bivens* liability

In addition to requesting equitable relief from the BoP and the individual defendants in their official capacities, DeBrew seeks to recover money damages from the individual defendants in their personal capacities in connection with each constitutional claim. The district court concluded DeBrew failed to plead facts sufficient to state a claim for relief against the individual defendants in their personal capacities. *DeBrew*, 847 F. Supp. 2d at 106. As the district court correctly observed, "*Bivens* claims cannot rest merely on respondeat superior. The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997) (internal citation omitted). DeBrew's complaint lacks facts showing the individual

defendants were personally involved in the alleged constitutional violations.

We therefore affirm the district court's dismissal of all the claims against the individual defendants in their personal capacities. We note, however, that DeBrew filed a motion for leave to amend his complaint, which the district court denied when it dismissed his constitutional claims. DeBrew contends his amended complaint includes factual allegations showing the individual defendants were personally involved in the unlawful conduct. If on remand the district court allows DeBrew to file an amended complaint, then it should consider whether that complaint includes sufficient factual allegations to state a claim for relief against any of the individual defendants in their personal capacities in connection with the two constitutional claims we have remanded for further proceedings.

### b. Appointment of counsel

On the day he filed his complaint, DeBrew also filed a motion to appoint counsel. The district court never expressly ruled on that motion, and DeBrew argues the court erred by not considering the matter. We are unable to determine from the record whether the district court overlooked the motion or whether it intended implicitly to deny the motion when it denied DeBrew's request to proceed *in forma pauperis*.[***] On

---

[***] The district court denied DeBrew's motion to proceed *in forma pauperis* because it determined he had "three strikes" for the purpose of 28 U.S.C. § 1915(g), which makes a prisoner ineligible to proceed *in forma papueris* if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under

remand the district court should rule expressly on DeBrew's motion to appoint counsel before conducting further proceedings in this case.

### c. Class certification

Finally, DeBrew contends the district court erred by denying his motion for class certification. We review for an abuse of discretion the decision to deny a request to certify a class. *See Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).

In order to represent a class, a plaintiff must show, among other things, that he "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The district court did not abuse its discretion in concluding DeBrew could not satisfy this requirement because a *pro se* litigant who is not trained as a lawyer is simply not an adequate class representative. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (holding a *pro se* plaintiff is not an adequate class representative "because the competence of a layman is clearly too limited to allow him to risk the rights of others" (internal quotation marks omitted)); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it was "plain error" for the district court to allow an "imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action"); *see also Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C.

---

imminent danger of serious physical injury." Some circuit courts have held a prisoner who is ineligible to proceed *in forma pauperis* under 28 U.S.C. § 1915(g) is therefore also ineligible to obtain appointed counsel under 28 U.S.C. § 1915(e)(1). *See, e.g.*, *Brightwell v. Lehman*, 637 F.3d 187, 192 & n.6 (3d Cir. 2011). We leave to the district court to decide in the first instance whether it may appoint counsel under § 1915(e)(1) or any other authority.

Cir. 1984) (holding a person who "is not a member of the bar of any court … may appear *pro se* but is not qualified to appear in the District Court or in this court as counsel for others").

We affirm the district court's order denying DeBrew's motion for class certification. If, however, the district court appoints counsel or DeBrew retains an attorney, then the court will in due course consider any renewed motion for class certification.

## II.   Conclusion

As is evident from the facts recounted above, the BoP could have simplified and expedited this protracted litigation by complying with its own regulations. Although the General Counsel of the agency was entitled to insist that DeBrew attach to his appeals a copy of the Regional Director's responses, it was BoP officials who made that impossible by failing to follow the agency's regulations requiring them to forward the responses to DeBrew at Butner and to retrieve a copy from the Administrative Remedy Index.

Nor have counsel for the defendants helped their clients' cause by advancing arguments that are flatly contradicted by the record, such as the assertion that DeBrew failed to request declaratory and injunctive relief in his complaint, Appellees' Br. at 25–26; *but see supra* at 10, and that DeBrew "offers no arguments" in response to the denial of his motion to certify a class and has therefore "conceded that denial of class certification was proper," Appellees' Br. at 18; *but see* Appellant's Br. at 8.

The judgment of the district court is affirmed in part and vacated in part and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*