In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-3400

LEROY N. INGRAM,

*Plaintiff-Appellant,*

*v.*

T.J. WATSON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:19-cv-00486-MG-JMS — **Mario Garcia**, *Magistrate Judge.*

SUBMITTED APRIL 13, 2023 — DECIDED MAY 4, 2023

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Leroy Ingram contends that, while confined in the United States Penitentiary at Terre Haute, he was set upon and beaten by guards, after which the medical staff denied him access to necessary care. In this suit, which relies on *Bivens v. Six Unknown Named Federal Agents*, 403 U.S. 388 (1971), he seeks damages from the prison's warden and several members of the staff. A magistrate judge, presiding by consent under 28 U.S.C. §636(c), concluded that

Ingram failed to exhaust his administrative remedies, as required by 42 U.S.C. §1997e(a), and granted summary judgment to all defendants. 2021 U.S. Dist. LEXIS 225730 (S.D. Ind. Nov. 23, 2021).

Ingram filed three substantive grievances. Two he did not pursue to conclusion. One of the two, asserting that members of the staff failed to protect him from harm, was rejected because it lacked required attachments. Regulations issued by the Bureau of Prisons require an inmate to resubmit a grievance or appeal from a rejection, but Ingram did neither. He says that he never received a decision rejecting this grievance, but the regulations require an appeal from a non-response. 28 C.F.R. §542.18. So whether or not the prison responds to a grievance, the inmate must appeal within the hierarchy, a process that ends only when the grievance has been presented to the General Counsel of the Bureau of Prisons. The district court did not err in concluding that Ingram failed to exhaust his opportunities with respect to this issue.

A second grievance asserted that staff retaliated against him by withholding necessary medical care. The prison rejected this grievance because Ingram had not attempted informal resolution—the first step of the process, which is to be followed by a formal grievance to the Warden, an appeal to the Regional Director, and a further appeal to the General Counsel. Again Ingram could have appealed this decision but did not. He says that he did not need to appeal it, because he filed this suit before receiving the response. Yet an inmate cannot short-circuit the grievance process by running to court while that process is ongoing. Again summary judgment for defendants was appropriate.

But Ingram's remaining substantive grievance—the first one he filed, complaining about the attack itself—is a different matter. He did not appeal this one to the General Counsel, but it is unclear whether the regulations required or even permitted him to do more than he did.

Ingram filed a grievance with the Warden, who rejected Ingram's contentions. Next he appealed to the Regional Director. Ingram asserts in an affidavit that, after he had waited several weeks for a response, he asked Officer Gore what was going on. According to Ingram, Gore replied that the prison had received the Regional Director's decision, which would not be provided to Ingram.

Ingram did two things in response. He filed a grievance about the operation of the grievance process. And he filed this suit. Three days after filing the suit, he received the Regional Director's response. By the time he received this document, it was too late to appeal to the General Counsel, for the suit was already pending—and administrative remedies must be exhausted before filing suit, rather than in parallel with the litigation. *Ross v. Blake*, 578 U.S. 632, 638–39 (2016).

The district court wrote that Ingram should have treated the prison's failure to hand over the Regional Director's decision as equivalent to a non-response and appealed to the General Counsel on the authority of §542.18. Yet that regulation specifies what a prisoner may or must do if the recipient does not act. Ingram insists that the Regional Director *did* act. Once a decision has been made, it must be attached to the papers appealing to the next level:

> Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP–11) and accompanied by

> one complete copy or duplicate original of the institution and re-
> gional filings *and their responses*.

28 C.F.R. §542.15(b)(1) (emphasis added). How was Ingram supposed to attach a copy of a decision that the prison refused to give him?

When the Regional Director is silent, an appeal to the General Counsel lies under §542.18 without the need to attach the nonexistent response. When the Regional Director makes an adverse decision, however, it must be attached under §542.15(b)(1). The defendants contend that, when the prison fails to turn over an extant decision, the prisoner must proceed as if no such decision had been made. But that's not what either §542.18 or §542.15(b)(1) says. These regulations partition the process into two possibilities: if no decision, appeal without attaching one; if an adverse decision, attach that decision to the appeal. The regulations do not contemplate what Ingram says happened to him: a written adverse decision withheld from the inmate.

Prisoners cannot attach what they don't have, but §542.15(b)(1) makes attachment mandatory. That brings into play the statutory rule that inmates must exhaust *available* grievance opportunities. (Section 1997e(a) says that inmates may not sue "until such administrative remedies as are available are exhausted.") If appeal to the General Counsel is blocked by the need to attach a document that the prisoner does not have, then that appeal is not "available" to the prisoner, and the statute allows the prisoner to turn to court. Several appellate decisions have reached similar conclusions. See, e.g., *DeBrew v. Atwood*, 792 F.3d 118, 127–28 (D.C. Cir. 2015) (administrative appeal to General Counsel not available to prisoner because he could not obtain a copy of Regional

Director's response); *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (prisoner exhausted available remedies after he did not receive Regional Director's response and his appeal to General Counsel was rejected for lacking the response). Likewise an appeal is not "available" when the Bureau of Prisons creates a written response that it declines to share with the prisoner.

In addition to relying on §542.18, defendants maintain that the prison was not concealing from Ingram any decision rendered by the Regional Director. (Presumably defendants mean by this that the prison was going to turn it over, no matter what Ingram understood Officer Gore to say.) Yet Ingram filed an affidavit asserting that he was told that he would not get the document. This statement is admissible as an adverse party's concession. Fed. R. Evid. 801(d)(2). A district court must accept evidence such as this when ruling on a motion for summary judgment and must consider the record in the light most favorable to the party opposing the motion. And because failure to exhaust is an affirmative defense, see *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022), it is doubly inappropriate to treat thinly supported statements in a plaintiff's affidavit as determinative. The burdens of production and persuasion rest on the defendants.

The question remains whether Ingram is telling the truth about what Gore said—or perhaps whether Ingram remembers the encounter correctly. Reliance on oral statements often creates problems; that's among the reasons why the Bureau's system demands that formal grievances and responses be in writing. More: we doubt that every guard in a prison knows what documents from the Regional Director are in the Warden's possession and what the Warden plans to do with them.

Prisoners need not accept at face value everything anyone on the staff tells them; Ingram could have asked for confirmation whether he was really going to be kept in the dark, but he did not take that step. Nor need courts accept at face value everything that an inmate says he heard from a guard. But the court also cannot disbelieve statements in affidavits without holding a hearing.

The vehicle for deciding what happened during a prisoner's effort to exhaust the grievance process has come to be called a *Pavey* hearing, after *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The district court should have held a *Pavey* hearing and taken testimony on subjects such as whether the Warden refused to provide the Regional Director's statement to Ingram or whether, instead, there was just bureaucratic delay in handing it over. After receiving evidence, which might include finding out exactly what Gore said to Ingram, the district court should decide whether §542.15(b)(1) excused Ingram from appealing to the General Counsel.

The decision of the district court is affirmed, except with respect to the grievance directed to the asserted physical attack. The case is remanded on that subject for further proceedings consistent with this opinion.