Argued and submitted June 3, affirmed December 15, 2021

Donald Scott UPHAM,
*Plaintiff-Appellant,*

*v.*

Sharon FORSTER,
*Defendant-Respondent.*

Lake County Circuit Court
18CV41790, 18CV32657;
A172547 (Control), A171784

504 P3d 654

This is a consolidated appeal of two cases arising from two requests made by plaintiff for certain records under the Public Records Law. In the first case, plaintiff appeals a judgment dismissing his claims as moot in light of defendant's destruction of the requested records. He contends that the case was not rendered moot by virtue of defendant's destruction of the records because the trial court could have required defendant to obtain the records from a third party. In the second case, plaintiff appeals an order denying his request for attorney fees. Plaintiff contends that he "prevailed" in the suit, and therefore the trial court was required to award him attorney fees under ORS 192.431(3). *Held*: The trial court did not err. In the first case, because the records had been destroyed, there were no records that were improperly withheld by defendant, and the trial court was without authority to order defendant to obtain the records from a third party. In the second case, defendant did not "prevail" in the suit so as to be entitled to attorney fees under ORS 192.431(3).

Affirmed.

Benjamin M. Bloom, Judge. (Order of Dismissal)

David M. Vandenberg, Judge. (Order Denying Attorney Fees and Costs)

George W. Kelly argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

## TOOKEY, J.

This is a consolidated appeal of two cases arising from two requests made by plaintiff for certain records from defendant, the Lake County District Attorney, pursuant to the Oregon Public Records Law, ORS 192.311 to 192.431.

In the first case, as relevant to this appeal, the records at issue were materials originally in possession of the Deschutes County Sheriff's Office, a copy of which the Deschutes County Sheriff's Office had sent to defendant, while retaining possession of the originals. Defendant, prior to receiving the first public records request, had destroyed the copy of the materials that she had received from the Deschutes County Sheriff's Office. The trial court determined that, because defendant had destroyed—and thus no longer possessed—the materials responsive to plaintiff's request, plaintiff's action against defendant was moot, and it dismissed the case on that basis. On appeal, in his first assignment of error, plaintiff contends, among other points, that this case was not rendered moot by virtue of defendant's destruction of the records, because the trial court should have required defendant to "go get the records" from Deschutes County Sheriff's Office.[1]

The second case concerns a different public records request. In the second case, during the pendency of the litigation in the trial court, but prior to defendant filing her answer, defendant produced the records that plaintiff had requested. The trial court also dismissed the second case as moot, reasoning that plaintiff had received all the records responsive to his second records request. Plaintiff then sought attorney fees, and the trial court denied plaintiff's request for attorney fees, determining that plaintiff did not "prevail" in the suit, as that term is used in

---

[1] We note that plaintiff frames his first assignment of error as that the trial court "erred in granting defendant's motion for a directed verdict and thus denying plaintiff's records request." We do not, however, understand the trial court to have granted defendant's motion for directed verdict. Instead, we understand the trial court to have dismissed the case as moot after trial, in which it had received evidence that was pertinent to both the issue of mootness and the merits of plaintiff's case. In any event, as relevant to our analysis, given plaintiff's arguments on appeal, we understand him to assign error to the trial court dismissing plaintiff's claim as moot.

ORS 192.431(3).[2] On appeal, in his second assignment of error, plaintiff contends that he prevailed in the suit, and therefore the trial court should have awarded him attorney fees.

For the reasons that follow, we conclude that the trial court did not err. We therefore affirm.

## I.   FACTS

### A.   *Plaintiff's First Public Records Request and First Complaint*

In early 2018, Lieutenant Davis of the Deschutes County Sheriff's Office was conducting an investigation into certain allegedly criminal conduct in Lake County. After completing his investigation, he contacted defendant, who, at the time, was the Lake County District Attorney, and asked her if she would review his "case file," which consisted of documents and CDs.

On February 27, 2018, Davis mailed a copy of his case file to defendant. Less than a month after receiving the case file, defendant reviewed the documentary materials in the case file, and she destroyed (via shredding) the materials that had been sent to her.[3] Around that same time, Davis and defendant spoke, and defendant informed Davis that she was declining prosecution. On March 19, 2018, at Davis's request, defendant mailed a letter to Davis stating the same.

On April 26, 2018, plaintiff emailed defendant the following:

"Pursuant to the public records law please provide me a copy of your records regarding case number 17-338788.

---

[2] ORS 192.431(3) provides, in relevant part:

"If a person seeking the right to inspect or to receive a copy of a public record prevails in the suit, the person shall be awarded costs and disbursements and reasonable attorney fees at trial and on appeal."

[3] Defendant testified that it was her practice to shred "copies" of documents that she received—"for instance," materials that she took home but did not need for trial.

She also noted that "this is a very small town," the records sent to her by Davis related to a "personnel matter," which was "potentially criminal," and that the records could have damaged someone's "credibility" and "integrity."

This case was submitted to you by Lt. Chad Davis in March 2018 and you declined to take action on it."

Defendant responded to plaintiff via email that "this is an ongoing matter and remains under investigation" and that the requested "documents are not available for release at this time."

On July 29, 2018, plaintiff brought suit against defendant alleging that she was "in possession of public records regarding the criminal case submitted to her by Davis," and "[b]ecause defendant has withheld numerous records, plaintiff is entitled to a declaration that the defendant must produce the improperly withheld records for inspection and/or copying."

It appears that, at some point thereafter, defendant informed plaintiff that she was no longer in possession of the records that had been sent to her by Davis.

B.    *The Second Public Records Request and Second Complaint*

On September 8, 2018, plaintiff sent a second public records request to defendant via email. That request read:

> "This email serves as a public records request. Please provide me a copy of all public records you received or sent to any person or any other source regarding the subject matter of the reports sent to you by Lt. Chad Davis that is the subject of the pending public records lawsuit against you. You have already asserted that you do not possess any of the public records Lt. Davis sent to you for your evaluation. However, I believe you received and created other public records related to that matter and I request that you provide me copies of all such public records."

Plaintiff did not receive a response to that request, and on September 19, 2018—11 days later—plaintiff filed a second complaint alleging that "[d]efendant is in possession of non-exempt public records" and "[b]ecause defendant has withheld numerous non-exempt records, plaintiff is entitled to a declaration that the defendant must produce the improperly withheld records for inspection and copying."[4]

_____

[4] Given defendant's failure to respond to plaintiff's second public records request within seven days, plaintiff had the statutory right to file suit against defendant at that time. *See* ORS 192.418(2) ("The failure of an elected official to

C.   *Defendant's Production of Documents, Further Litigation, and Trial*

On September 25, 2018, plaintiff wrote to defendant's counsel, stating that "there hasn't been any response to my public records request."

On October 12, 2018, defendant's counsel produced seven pages of documents responsive to plaintiff's records requests.[5] The documents produced on October 12, 2018, consist of (1) a September 24, 2018, cover letter from defendant responding to a public records request made by a nonparty to this litigation, which enclosed defendant's March 19, 2018, letter to Davis; (2) an email chain between defendant and that same nonparty concerning that nonparty's request; and (3) an email chain between defendant and plaintiff regarding plaintiff's first public records request.

In her answer and affirmative defenses in both actions—filed October 19, 2018, in the first case and November 8, 2018, in the second case—defendant asserted that "[t]he only documents Defendant retained regarding the crime report from Lt. Chad Davis and the criminal investigation have been produced," that she "has no other documents," and that she had "produced all responsive documents."

Plaintiff's two suits were consolidated, and after the trial court denied defendant's motion for summary judgment, the case went to trial. During a bench trial defendant testified that she had destroyed the documents and CDs sent to her by Lieutenant Davis within a month of receiving them; Lieutenant Davis testified that he retained the

---

deny, grant, or deny in part and grant in part a request to inspect or receive a copy of a public record within seven days from the day of receipt of the request shall be treated as a denial of the request for the purpose of determining whether a person may institute proceedings for injunctive or declaratory relief under ORS 192.401, 192.411 or 192.415."); ORS 192.427 (providing that, "[i]n any case in which a person is denied the right to inspect or to receive a copy of a public record in the custody of an elected official" the person "may institute proceedings for injunctive or declaratory relief in the appropriate circuit court, as specified in ORS 192.401, 192.411 or 192.415").

[5]  The cover letter accompanying defendant's October 12, 2018, document production states: "Enclosed are documents produced as a supplemental response to your public record requests." Plaintiff characterizes those documents as responsive to his second public records request.

originals of the materials he had sent to defendant; and plaintiff testified as to his belief that it was his filing of the second lawsuit that was the reason for defendant's production of records on October 12, 2018.

Following the bench trial, defendant argued the cases were moot. As defendant saw it, "[t]his is a public records lawsuit, and so what this [court] has authority to do is only order the release of documents that have been improperly withheld" and that "none of the documents had been improperly withheld." Defendant posited that "once the documents are received, the lawsuit is moot."

Plaintiff, for his part, argued that the records requested were "clearly improperly withheld from me" insofar as "they were destroyed." He also argued that "[i]f the public agency knows that they can get [destroyed records] from the source with no problem whatsoever, they're required by the FOIA and its case law to go get the records and put them back in their file."

Finally, plaintiff argued that he prevailed in the suit because he "received what [he] asked for as a consequence of filing the suit." (Plaintiff appears to have been referring to the seven pages of documents that were produced on October 12, 2018.)

The trial court ruled from the bench concerning both cases. With regard to the records defendant had destroyed, the trial court stated, "[W]hat I can do in this public records action is to order [defendant] to produce what they haven't produced that they have withheld, and I find there's nothing they withheld because it was destroyed."[6] With regard to the records plaintiff had produced, the trial court ruled that "the public records request is not well-taken because those records have been produced in this action, and now it is moot."

The court also noted that the Deschutes County Sheriff's Office and the Lake County District Attorney's

---

[6] In the alternative, the trial court determined that the destroyed records were "part of ongoing investigations, and, as such, would be entitled to one or more exemptions from the Public Records Law." On appeal, defendant also challenges that determination, however, given our resolution of defendant's argument concerning mootness, we do not reach that challenge.

Office are "separate bodies," and stated, "I do not find that the complaint was the reason for the" production of records on October 12, 2018.

Subsequently, the court entered a judgment dismissing plaintiff's claims in both cases. The judgment contained "findings of fact and conclusions of law," among them: "The Court believed Defendant's testimony that she shredded the copy of the documents Plaintiff requested shortly after receiving the documents and prior to receiving the public records requests"; that the "Court accepts Defendant's representation that all responsive, non-exempt records have been produced"; that documents "that were produced in October 2018 were produced in response to the September 2018 public records request, not as a result of the Public Records lawsuit filed eleven days after the request"; that "[b]ecause this Court finds that the requested documents were not improperly withheld, any ruling on Plaintiff's claims for declaratory and injunctive relief would have no effect on the rights of the parties"; and "Plaintiff's claims are moot for the reasons set forth in *Clapper v. Oregon State Police*, 228 Or App 172[, 206 P3d 1135,] (2009), which this Court concludes is controlling."

In relation to the trial court's findings of fact and conclusions of law, at a hearing, plaintiff argued that there was no evidence to support the finding that the "documents were not turned over in response to the lawsuit." Plaintiff noted there was "no testimony offered by anybody about [the reason for] the delay" in producing records. The court explained its reason for finding that the documents "produced in October 2018 were produced in response to the September 2018 public records request," *viz.*:

> "I found that at the time [the second records request] was going on, the [defendant] was dealing with the litigation in your case, and these other records were produced shortly thereafter and it wasn't a consequence of filing suit, it was the fact that the DOJ was now involved, and it took time to get those records produced."[7]

---

[7] We note that defendant was represented by the Oregon Department of Justice in both lawsuits brought by plaintiff, although it is unclear precisely what the trial court was referring to when it referred to the involvement of the "DOJ."

D.  *Plaintiff's Request for Attorney Fees and Costs in the Second Case*

Following entry of the judgment dismissing plaintiff's claims in both cases, plaintiff filed a request for attorney fees and costs as to the second case, arguing that he was entitled to such fees and costs because he "prevailed" under ORS 192.431(3). In support of that view, plaintiff made two arguments.

First, he argued that he prevailed under ORS 192.431(3) because he "triumphed, won, was victorious because the lawsuit was successful—he obtained all records he sought in his suit." That is, he argued that if records are produced after a lawsuit is filed seeking to compel production of such records, then the party seeking production has prevailed within the meaning of ORS 192.431(3).

Second, plaintiff argued that he was entitled to attorney fees and costs because it was the second lawsuit that "forced [defendant] to change course and furnish all the requested records." That is, plaintiff argued that he was entitled to attorney fees and costs because his second lawsuit was the "catalyst" for the production of the requested records.

The trial court denied plaintiff's request for attorney fees, rejecting plaintiff's arguments. In doing so, the trial court noted that the second lawsuit was filed 11 days after the second records request was submitted and that that records request did not contain a deadline for production. The court explained:

> "[B]y the time I decided [the case] the records were produced, it was done, and *I did not find that the filing of the suit was the catalyst for the* [*defendant*] *to act.*
>
> "So I find you're not entitled to fees."

(Emphasis added.)

## II.  ANALYSIS

A.  *Plaintiff's Appeal of the First Case and First Assignment of Error*

Regarding the first case, on appeal, in his first assignment of error, plaintiff contends, among other points,

that the fact that "defendant's copy of the records was destroyed does not moot plaintiff's records request." Plaintiff notes that, under ORS 192.431(1), "'the court has jurisdiction to enjoin the public body from withholding records and to order the production of any records improperly withheld from the person seeking disclosure.'" (Quoting ORS 192.431(1).). In plaintiff's view, the first case was not moot, because the trial court "should have ordered defendant to go to Lt. Davis, ask for a copy of the destroyed records, and then release them to plaintiff."[8]

Defendant responds, among other points, that "because defendant no longer possessed the materials in question when the records request arrived, she could not have violated statutory requirements by not giving them to plaintiff in response to his request." Defendant argues that, pursuant to ORS 192.431(1):

> "The authority to order a public body to 'produce' records that it has 'improperly withheld,' *** presumes that the public body possessed those records when the records request was made and that the public body continues to do so. If the public body in question does not actually have the records being requested, nothing in ORS 192.431 authorizes a trial court to somehow require the public body to obtain new copies of those records from some other public body, one that has not been accused of improperly withholding records."

Thus, in defendant's view, as we understand defendant's argument, the trial court did not err in concluding plaintiff's claim in the first case was moot.

"In reviewing a trial court's determinations following a bench trial, we review the trial court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for

_____

[8] It is unclear from plaintiff's briefing precisely which statute he believes to be the source of the court's authority to order defendant to obtain records from the Deschutes County Sheriff's Office. At oral argument, when asked, he noted that there was a "series of statutes" and appealed to "common sense."

In light of the statutory scheme encompassing the Public Records Law, ORS 192.311 to 192.431, however, and a reference in plaintiff's briefing to ORS 192.431(1) as providing the court's "authority" as "to cases that end up in circuit court," we understand plaintiff to rely on ORS 192.431(1).

legal error." *Block v. DEA Properties-2 LLC*, 315 Or App 525, 530, 501 P3d 545 (2021). "Whether a proceeding is moot is a question of law" that we "review for legal error." *Birchall v. Miller*, 314 Or App 521, 522, 497 P3d 1268 (2021). "A case becomes moot when a court's decision will no longer have a practical effect on the rights of the parties." *Bowers v. Board of Parole*, 309 Or App 566, 569, 483 P3d 22, *rev den*, 368 Or 402 (2021) (internal quotation marks omitted).

Here, as framed by the parties' arguments on appeal and the trial court's ruling, this case requires us to examine whether ORS 192.431(1) authorized the trial court to order defendant to obtain the requested records from Deschutes County Sheriff's Office.[9] If not, the case was moot, as the court's decision no longer would have a practical effect on the rights of the parties, because there would be no records for defendant to produce; those records had been destroyed.[10]

ORS 192.431(1) provides, in relevant part:

> "In any suit filed under [various statutory provisions related to inspection of public records], the court has jurisdiction to enjoin the public body from withholding records and to order the production of any records improperly withheld from the person seeking disclosure."

The meaning of ORS 192.431(1) presents a question of statutory construction, making our review for "for legal error, employing the methodology described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)." *Central Oregon LandWatch v. Deschutes County*, 285 Or App 267, 276-77, 396 P3d 968 (2017). Our objective is to "determine the meaning of the statute that the legislature that enacted it most likely intended," by "examining

---

[9]  We understand the trial court's statement that "what I can do in this public records action is to order [defendant] to produce what they haven't produced that they have withheld" to be a reference to its authority under ORS 192.431(1).

[10]  We note that plaintiff's argument as to mootness turns on his argument that the trial court could have ordered defendant to obtain the requested records from the Deschutes County Sheriff's Office.

That is, plaintiff does not argue that, if the trial court had not erred in determining that it lacked the authority to order defendant to obtain the requested records from the Deschutes County Sheriff's Office, then the case would still be justiciable.

the statutory text, in context, and, where appropriate, legis-
lative history and relevant canons of construction." *State v.
Robinson*, 288 Or App 194, 199, 406 P3d 200 (2017) (inter-
nal quotation marks omitted). "One of our guiding rules for
construing statutes is that 'the office of the judge is simply
to ascertain and declare what is, in terms or in substance,
contained therein, not to insert what has been omitted, or to
omit what has been inserted.'" *State v. Phillips*, 367 Or 594,
601, 482 P3d 52 (2021) (quoting ORS 174.010).

        In this case, the text of ORS 192.431(1) is disposi-
tive. As noted, that statute provides, in relevant part:

> "In any suit filed under [various statutory provisions
> related to inspection of public records], the court has juris-
> diction to enjoin the public body from *withholding* records
> and to order the production of any records improperly *with-
> held* from the person seeking disclosure."

ORS 192.431(1) (emphases added).

        ORS 192.431(1) thus authorizes the trial court to
enjoin a public body from "withholding" records and author-
ity to order the production of records that have been "improp-
erly withheld" by a public body.

        The legislature did not define "withholding" or
"withheld" in ORS 192.431(1), and therefore, we look to the
dictionary for guidance. *Pride Disposal Co. v. Valet Waste,
LLC*, 298 Or App 751, 759, 448 P3d 680, *rev den*, 366 Or 64
(2019). The ordinary meaning of "withhold" or "withheld,"
as relevant here, is "to hold back" and "to desist or refrain
from granting, giving, or allowing : keep in one's possession
or control : keep back." *Webster's Third New Int'l Dictionary*
2627 (unabridged ed 2002). In light of those definitions,
we understand the relief specified in ORS 192.431(1) when
a record is "improperly withheld" to presuppose that the
record was in a public body's "possession or control" at the
time a public records request was received, and that the pub-
lic body "desist[ed] or refrain[ed]" from "granting" or "giving"
such record to the person requesting its disclosure. That is, a
party can "withhold" only that which it possesses or controls.

        That understanding of what it means for a public
body to have "improperly withheld" a record under Oregon's
Public Records Law is consistent with how federal cases

interpreting the federal Freedom of Information Act (FOIA) have interpreted the phrase "improperly withheld" under the FOIA, and we have looked to such cases for guidance when interpreting Oregon's Public Records law. *See Oregonian Publishing v. Portland School Dist. No. 1J*, 152 Or App 135, 138, 952 P2d 66 (1998), *aff'd*, 329 Or 393, 987 P2d 480 (1999) ("It is appropriate to look to the FOIA for guidance on the issue, because Oregon's public records inspection law is modeled after it and comparable state laws."). The FOIA, like ORS 192.431(1), provides a claimant with a remedy against an agency that has "improperly withheld" a record. 5 USC § 552(a)(4)(B). Under the FOIA "'[i]f the agency is no longer in possession of the document, for a reason that is not itself suspect, then the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it.'" *DeBrew v. Atwood*, 792 F3d 118, 123 (DC Cir 2015) (quoting *SafeCard Servs., Inc. v. S. E. C.*, 926 F2d 1197, 1201 (DC Cir 1991); *see id.* ("[Bureau of Prisons] did not violate the disclosure requirements of the FOIA by failing to produce recordings of [plaintiff's] telephone conversations because the agency is not obligated, nor is it able, to disclose a record it does not have."); *see also, e.g.*, *Lechliter v. Rumsfeld*, 182 F App'x 113, 116 (3d Cir 2006) ("Because the [Department of Defense] is not required to produce documents 'if [it] is no longer in possession of the documents for a reason that is not itself suspect,' there has been no improper withholding." (Quoting *SafeCard Servs., Inc.*, 926 F2d at 1201 (brackets in *Lechliter*)); *Houser v. U.S. Dept. of Health & Human Servs.*, 486 F Supp 3d 104, 114-15 (D DC 2020) ("Furthermore, '[i]f the agency is no longer in possession of the document, *for a reason that is not itself suspect*, then the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it.'" (Quoting *SafeCard Servs., Inc.*, 926 F2d at 1201 (brackets and emphasis in *Houser*)).[11]

---

[11] In pressing his argument on appeal, plaintiff points to *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F Supp 2d 28, 41 (DDC 1998), a case decided under the FOIA, where the court ordered a magistrate judge to "explore the extent to which" the Department of Commerce (DOC) "has illegally destroyed and discarded responsive information, and possible methods for recovering whatever responsive information still exists outside of the DOC's possession."

Here, as found by the trial court, with respect to the records at issue in the first case, the records had been destroyed by defendant *prior to* her receiving plaintiff's public records request. The records were not in her "possession" when she received the request. Likewise, the records were not in her "control" when she received the request; although the Deschutes County Sheriff's Office had copies of the records, as the trial court observed, the Deschutes County Sheriff's Office and the Lake County District Attorney's Office are "separate bodies." In such circumstance, there were no records that were "improperly withheld" by defendant under ORS 192.431(1) for the trial court to order defendant to disclose.[12]

We have previously observed that "improper withholding of a public record could occur in any number of ways short of some formal 'denial' of a records request, such as by stonewalling or other obstructive conduct on the part of the public body." *ILWU v. Port of Portland*, 285 Or App 222, 231, 396 P3d 235, *rev dismissed*, 362 Or 39 (2017). That is undoubtedly true. But that does not mean a public body can be understood to improperly "withhold" a record when the public body does not possess or control the record at issue at the time that the public body received the public records request.

Consequently, in the absence of authority to order defendant to "go get the records" from Deschutes County Sheriff's Office, we conclude that the trial court did not err in determining that the first case was moot.

---

*Judicial Watch, Inc.* does not help plaintiff. "*Judicial Watch* involved four years of extensive and egregious misconduct by the [DOC]—including the shredding and unexplained removals of requested documents—in response to various FOIA requests." *Flowers v. I.R.S.*, 307 F Supp 2d 60, 71 (DDC 2004); *Judicial Watch, Inc.*, 34 F Supp 2d at 30 (noting that the "record of [DOC's] misconduct in this case is so egregious and so extensive that merely granting the DOC's motion and ordering a new search would fail to hold the agency fully accountable for the serious violations that it appears to have deliberately committed").

Plaintiff's attempt to liken this case to *Judicial Watch, Inc.*—where "egregious" and "extensive" misconduct occurred after a public records request was received, and involved "violations" that appeared to have been "deliberately committed"—is, to say the least, inapposite.

[12] Plaintiff does not argue that defendant would have had reason to have anticipated a public records request for the materials that she destroyed. Consequently, we express no opinion on how ORS 192.431(1) would, or would not, apply in such a circumstance.

B.  *Plaintiff's Appeal of the Second Case and Second Assignment of Error*

Regarding the second case, on appeal, in his second assignment of error, plaintiff contends that the trial court erred when it denied his request for attorney fees and costs under ORS 192.431(3), which provides:

> "If a person seeking the right to inspect or to receive a copy of a public record prevails in the suit, the person shall be awarded costs and disbursements and reasonable attorney fees at trial and on appeal."

In plaintiff's view, he "prevailed" because defendant complied with his public records request "prior to trial but after plaintiff's request had been wrongfully denied." Plaintiff contends that that sequence of events means he "necessarily prevailed, and he should be allowed his attorney fees." Further, plaintiff asserts that we should adopt what has been termed the "'catalyst' theory," whereby a plaintiff is "entitled to attorney fees in cases where the defendant voluntarily complies with a plaintiff's requested relief *** if his suit is a catalyst for the defendant's voluntary compliance." (Internal quotation marks omitted.) In making that argument, plaintiff asserts that there "was no evidence to support the [trial court's] finding that the records were released 'not as a result of the Public Records lawsuit.'" Plaintiff argues that, "given that the records were released *after* the suit was filed, *it can be inferred* that the suit was the catalyst for the release." (Emphases in plaintiff's brief.)

Plaintiff asks that "we reverse the denial of plaintiff's fee request (with or without a formal adoption of the 'catalyst theory') and remand so that the amount of the fee award can be determined."

Defendant responds that plaintiff did not "prevail," because plaintiff did not "obtain a favorable judgment" in the case, and that the trial court "correctly rejected plaintiff's catalyst theory." Defendant argues, among other points, that plaintiff "presented no evidence that required the trial court to find that defendant made efforts to produce the requested records *because* of the lawsuit." (Emphasis in defendant's brief.)

As context for our analysis, we begin with a discussion of our decision in *Clapper*, 228 Or App 172, as juxtaposed against our more recent decision *Merrick v. City of Portland*, 313 Or App 647, 496 P3d 1085 (2021), which was decided during the pendency of this appeal. We agree with the trial court that *Clapper* is controlling. Further, although plaintiff's second assignment of error addresses attorney fees, not mootness, we include a discussion of both *Clapper*'s and *Merrick*'s rulings on mootness, as they are relevant to our analysis of plaintiff's second assignment of error.

In *Clapper*, the plaintiff brought a lawsuit under the Public Records Law. 228 Or App at 174. During the pendency of the litigation, the records that the plaintiff had requested were produced to the plaintiff, apparently to comply with a separate order from the Attorney General. *Id.* at 175. The trial court entered judgment in favor of the defendant on the ground that the plaintiff had received all of the records that he had requested, thereby rendering the action moot. *Id.* at 174. On appeal, the plaintiff argued that the trial court erred in entering judgment in favor of the defendant based on mootness, and that the court should have awarded him attorney fees because, "even if the case had become moot, that was so only because plaintiff's action had compelled the agency to disclose the records." *Id.*

We rejected plaintiff's arguments explaining that, "by the time of trial, plaintiff had received all of the records that he had requested" and therefore "[a] ruling by the court would have had no effect on the rights of either party." *Id.* at 178. We determined that the "case was therefore moot" and that "dismissal [was] the appropriate disposition," noting that "typically, when a judgment dismisses the complaint, the defending party is considered the prevailing party." *Id.* (internal quotation marks and brackets omitted).

With regard to the plaintiff's request for attorney fees, we explained that plaintiff contended that

"despite the fact that defendant was the prevailing party, plaintiff is entitled to attorney fees under the so-called 'catalyst' theory, that is, that, where a defendant voluntarily complies with a plaintiff's requested relief, thereby rendering the plaintiff's lawsuit moot, the plaintiff is a 'prevailing

party' *** if his suit is a catalyst for the defendant's voluntary compliance."

*Id.* at 178-79 (internal quotation marks and brackets omitted). We rejected that argument, explaining that "Oregon courts have not adopted the catalyst theory, and, even if they had, it would not apply here," because "plaintiff has adduced no evidence to support the assertion that defendant complied with his request as a result of the action and not because it was ordered to do so by the Attorney General." *Id.* at 179.

In *Merrick*, the plaintiff brought a lawsuit under the Public Records Law. 313 Or App at 648. Plaintiff moved for summary judgment, but instead of ruling on that motion, the trial court entered an order that "abated further proceedings in the court pending remand to the district attorney." *Id.* at 653. The order further specified that the defendant "could *not* appeal an adverse ruling [of the district attorney] to the circuit court." *Id.* at 653-54 (emphasis in original). The district attorney issued an order that "directed the [defendant] to release all of the requested records," and the defendant complied. *Id.* at 655.

The defendant then filed a motion to dismiss the plaintiff's lawsuit, arguing that the case was moot because any further decision by the court would have no practical effect on plaintiff's rights. *Id.* The plaintiff responded that his complaint was not moot and that the trial court should enter a judgment in his favor and award him attorney fees as having prevailed. *Id.* The trial court granted the defendant's motion to dismiss, concluding that, because plaintiff ultimately received the requested records as a result of the district attorney's order, plaintiff received the relief he sought, the case had become moot, and there was nothing further for the court to do. *Id.* The court also concluded that, because plaintiff had not been awarded a favorable judgment from the court itself, plaintiff had not prevailed so as to become entitled to attorney fees. *Id.*

On appeal, we concluded "that the trial court erred in dismissing plaintiff's claims as moot, in light of the novel remand procedure it had ordered, and that the trial court erred in denying plaintiff's petition for attorney fees, based

on its conclusion that plaintiff had not prevailed in the proceeding." *Id.* at 649.

    In discussing mootness, we explained that "the effect of the court's choice to enter an abate-and-remand order without the agreement of both parties" meant that "plaintiff's claim in circuit court was not rendered moot, as if it had somehow been decided in the meantime by circumstances outside the court's own proceedings." *Id.* at 659. That is, the "release of the requested records did not render plaintiff's case moot because the records were disclosed pursuant to an order of the district attorney that was made binding by the abate-and-remand order of the trial court." *Id.* at 660. Thus, "plaintiff's success was, in fact, determined, at least in critical part, through the court's action." *Id.* at 661. We also observed that the "nature of the court's remand order was analogous to the procedure for a court's order to compel contractual arbitration or the procedure to engage an outside party to serve as a referee adjunct to the court's proceeding." *Id.* at 659.

    Regarding plaintiff's petition for attorney fees, we noted that the Public Records Law does not

> "define the term 'prevails' as used in ORS 192.431(3), but the legislature used similar language when defining 'prevailing party' for the purposes of attorney fees in civil cases generally, explaining that
>
> > '[f]or the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment or arbitration award on the claim.'"

*Id.* at 662 (quoting ORS 20.077(2) (brackets in *Merrick*)). We noted that, "[i]n essence, plaintiff received a favorable ruling in the equivalent of an arbitration award," and "any judgment to be entered as a result of our conclusion" regarding mootness "should make the point clearer." *Id.* In so ruling regarding attorney fees, we distinguished *Clapper*, by noting that the "plaintiff's case [in *Merrick*] was not rendered moot by a voluntary action of the [defendant in *Merrick*] independent of any order arising from plaintiff's public records claim." *Id.*

    We also explained in *Merrick* that "there can be little doubt that plaintiff prevailed," noting that the plaintiff had

overcome a number of challenges to the release of records mounted by the defendant:

> "[H]e challenged a *** denial of his request based on two specified exemptions [asserted by the defendant]; he persevered after the [defendant] shifted its position during his challenge, after the [defendant] recognized that the records were public but reserved its option to redact and reassert several exemptions; he made a pure-law challenge to overcome the city's demand for a [monetary] deposit before it would identify the exemptions to be at issue; and, as a matter of law, plaintiff overcame the city's renewed exemptions in a ruling of the district attorney—a ruling that was predetermined to be binding by reason of the court's order."

*Id.* at 663.

This case is like *Clapper*, and not like *Merrick*. We initially observe that, as was the lawsuit in *Clapper*, plaintiff's second lawsuit was rendered moot by defendant's compliance with plaintiff's second records request. That is because, like the defendant in *Clapper*—and unlike the defendant in *Merrick*—defendant's compliance with the public records request occurred independent of any court order arising out of plaintiff's public records claim. That is, here, no court order resulted in defendant producing the requested records. Thus, as in *Clapper*, the "appropriate disposition," as the trial court determined, was to dismiss the case as moot. 228 Or App at 178. And, as in *Clapper*, that meant the defendant was the "prevailing party." *Id.*

Nevertheless, like the plaintiff in *Clapper*, plaintiff contends that he is entitled to recover attorney fees.

Plaintiff argues that the sequence of events in this case—*i.e.*, that defendant produced the requested records after plaintiff filed suit—means he "necessarily prevailed," and therefore, he is entitled to recover attorney fees. In our view, that argument is foreclosed by *Clapper*. In sum and substance, *Clapper* demonstrates that merely receiving the requested records after a lawsuit has been filed is not enough to "prevail[]" in a public records action, as that term is used in ORS 192.431(3).

In that regard, we note that this is not a case where, "[i]n essence, plaintiff received a favorable ruling in the equivalent of an arbitration award," like in *Merrick*. 313 Or App at 662. Nor did plaintiff receive something that was, in essence, the equivalent of a "favorable judgment." ORS 20.077(2). Although *Merrick* suggests that, given the similar language used in ORS 20.077(2) and ORS 192.431(3), a party "prevails" under ORS 192.431(3) if they "in essence" receive the "equivalent of" a "favorable judgment" or "arbitration award," plaintiff did not do so in this case. *Merrick*, 313 Or App at 662.

As for plaintiff's argument regarding the "catalyst theory," as noted above, in *Clapper* we observed that "Oregon courts have not adopted the catalyst theory," but determined that, "even if they had, it would not apply here," because "plaintiff has adduced no evidence to support the assertion that defendant complied with his request as a result of the action and not because it was ordered to do so by the Attorney General." 228 Or App at 179; *see also Conifer Ridge Homeowners Assn. v. Hayworth*, 176 Or App 603, 610, 32 P3d 929 (2001) (observing that "we can find no Oregon decision that adopts the 'catalyst theory' for determining a party's entitlement to attorney fees," but ultimately determining that "[w]e need not decide here whether" catalyst theory "is viable," because there was no evidence that defendant's compliance was a result of plaintiff's lawsuit).

Here, as in *Clapper*, we need not decide whether to adopt the "catalyst theory." In this case, when presented with the catalyst theory, the trial court expressly "did not find that the filing of the suit was the catalyst for the [defendant] to act." Although plaintiff argues that, "given that the records were released *after* the suit was filed, *it can be inferred* that the suit was the catalyst for the release," the trial court was not required to make such an inference, particularly in light of the other facts it identified. That is, as indicated above, plaintiff's suit was filed 11 days after the second public records request was sent, and the second public records request contained no production deadline; in short, no evidence required the trial court to accept plaintiff's position that the second lawsuit

was the catalyst for defendant's production of the requested records.[13]

In light of the foregoing, we affirm.

Affirmed.

_____

[13] On appeal, in his reply brief, plaintiff argues that, "given that plaintiff, and all similarly situated records requesters, will never be able to reach into the minds of state officials and demonstrate their motivation for a post-suit release of records, the burden of [proving] that the suit was *not* the catalyst for the records' release should be placed on the state." Plaintiff cites no precedent in making that argument.

Plaintiff's position regarding the burden of proof is inconsistent with our analysis in *Clapper*, in which we suggested that a party seeking to recover fees under the "catalyst theory" bears the burden of proof. *See Clapper*, 228 Or App at 179 ("[P]laintiff has adduced no evidence to support the assertion that defendant complied with his request as a result of the action and not because it was ordered to do so by the Attorney General."). Plaintiff's position is also inconsistent with the law in many jurisdictions that have adopted the "catalyst theory." *See, e.g.*, *Coal. for a Sustainable Future in Yucaipa v. City of Yucaipa*, 238 Cal App 4th 513, 522, 189 Cal Rptr 3d 306, 313 (2015) ("To satisfy the causation prong of the catalyst theory, the plaintiff need not show that litigation was *the only cause* of the defendant's acquiescence, only that it was a substantial factor contributing to defendant's action." (Emphasis in *Coal. for a Sustainable Future in Yucaipa*)); *Frankel v. D.C. Office for Planning & Econ. Development*, 110 A3d 553, 558 (DC 2015), *as amended*, (Mar 5, 2015) ("[T]he catalyst theory continues to operate in D.C. FOIA cases, and a party prevails in whole or in part under § 2-537(c) when he demonstrates a causal nexus between the action brought in court and the agency's surrender of the information." (Internal quotation marks and brackets omitted.)); *Bonanno v. Verizon Bus. Network Sys.*, 196 Vt 62, 72, 93 A3d 146, 154 (2014) ("To prevail for purposes of the catalyst theory, a party must demonstrate: *** that the filing of the lawsuit was a necessary and important factor in achieving the other party's change in conduct ***." (Internal quotation marks omitted.)).